IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
UNITED STATES OF AMERICA         : CASE NO. 1:02 CV 79
                                           :
                    Appellant : <u>MEMORANDUM OF OPINION AND</u>
                                           : <u>ORDER DISALLOWING APPELLEES'</u>
           -vs-                  : <u>CLAIM FOR EMOTIONAL DISTRESS</u>
                                           : <u>DAMAGES UNDER 11 U.S.C. § 362(h)</u>
ANDREA HARCHAR, et al.          : <u>AND REVERSING THE ORDER OF THE</u>
                                           : <u>BANKRUPTCY COURT WHICH</u>
                   Appellees : <u>PERMITTED THE APPELLEES TO</u>
                                           : <u>AMEND THEIR COMPLAINT (NUNC</u>
------------------------------------------------------- : <u>PRO TUNC FOR TYPOGRAPHICAL</u>
                                         : <u>ERROR)</u>

UNITED STATES DISTRICT JUDGE LESLEY WELLS

       This case focuses on an issue of statutory construction and is before the Court on

the United States' appeal from a decision by Bankruptcy Judge Pat E. Morgenstern-

Clarren to allow Andrea and Kenneth Harchar (collectively the "Harchars") to amend their

complaint to add a claim for emotional distress damages allegedly caused by the United

States violating the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a).

       The primary issue before this Court is whether or not emotional harm is an "injury"

compensable as "actual damages" under 11 U.S.C. § 362(h).  The answer to this question

will resolve the secondary issue on appeal – whether or not the bankruptcy court properly

allowed the Harchars to amend their complaint to seek damages based upon emotional

distress (<u>i.e.</u> whether it would be "futile" to include claims for such damages in an amended

complaint alleging violations of 11 U.S.C. §362(a)).

Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C.    § 362(h). Based upon an analysis of the statutory text, the purpose and historical context of the enactment of § 362(h), as well as legislative history and pertinent case law, this Court finds that "actual damages" referenced in § 362(h) do not  include those intangible damages arising from injury to one's peace of mind.  Because § 362(h) does not provide for recovery of damages related to emotional distress it would be futile for the Harchars to amend their complaint to include a demand for such damages.  Therefore, the question of injury by willful violation of a stay need not be addressed. The Bankruptcy Court erred in granting the Harchars' motion to amend their complaint.

## I.  <u>FACTUAL AND PROCEDURAL HISTORY</u>[1]

On 1 May 1998, the Harchars filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code.  (Third Amended Complaint, ¶7 (provided at pages 112-125 of the record on appeal)).  The Harchars named the IRS as secured and unsecured creditors in the bankruptcy proceeding, and the Internal Revenue Service ("IRS") filed amended pre-petition claims including a $353 priority tax claim and a general unsecured tax claim of $6,335.  (<u>Id.</u> at ¶¶8 & 19).  On 2 October 1998, the bankruptcy court confirmed the

---

[1] The factual and procedural history is based on the summaries included by the parties in their pleadings on this appeal and the allegations of the Harchars' Third Amended Complaint.

Harchars' plan providing for full payment of the $353 priority tax claim and partial payment of the $6,335 unsecured tax claim over a period of 60 months (the "Plan").  (Id. at ¶18).

After confirmation of the Plan, and while the Harchars were making payments in compliance with the same, the Harchars filed their 1999-year income tax return claiming a refund of $4,303.  (Id. at ¶¶29 & 47).  The tax refund was not automatically paid to the Harchars because the IRS had placed a "freeze code" on IRS computers as a result of the Harchars' bankruptcy filing in 1998.[2]  (Id. at ¶¶9-28 & 32-33).  Mrs. Harchar contacted the IRS in April of 2000 and was told that her refund would not be released "because of her prepetition tax obligations."  (Id. at ¶¶40-41).  Mrs. Harchar then enlisted the assistance of her attorney to obtain the 1999-year refund.  (Id. at ¶42).  In May of 2000, the Harchars'

---

[2]The government has devoted a significant portion of its briefing to explain the operation of the "freeze code" and the motivation for its use.  The same will not be related here as such details go to the merits of the Harchars' claim that the government violated § 362(a).  In this appeal, the issue is whether the proposed amendments to the Harchars' complaint would be futile – an analysis that requires consideration of whether the proposed amendments would survive under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Hahn v. Star Bank, 190 F.3d 708 (6th Circuit 1999).  Under Rule 12(b)(6), the allegations of the proposed amended complaint must be accepted as true and construed in the light most favorable to the Harchars.  Thus, for purposes of this appeal, the Court must accept the allegations of the complaint as true and assume that the Harchars can prove a violation of § 362(a).

attorney filed the underlying suit alleging that the IRS was in violation of the automatic stay.[3]

Before learning of the Harchars' filing of a complaint

against it, in July of 2000, the IRS paid the Harchars $4,404.69 for the 1999-year return

(which included $101.69 in statutory interest).  (Record, at 25, ¶8(e)).

      In early 2001, the Harchars again experienced problems in obtaining their tax

refunds for the year 2000.  (Third Amended Complaint, at ¶¶55-77).  On 30 January 2001,

Mr. Harchar filed his 2000-year return showing a refund due to him in the amount of $2,934.

(Id. at ¶58).  Later, Mrs. Harchar filed her own 2000-year tax return showing a refund due to

her in the amount of $2,353.  Because the freeze code was still in place, the Harchars did

not automatically receive their refunds as expected.  (Id. at ¶¶65-70).  Again, the Harchars

attempted to resolve the situation with calls to the IRS and their attorney. (Id. at ¶¶71-72).

Ultimately, the IRS manually issued the Harchars' 2000-year refunds after satisfying itself

that Mr. Harchar did not improperly claim two dependent children on his 2000-year tax

filing.

      On 16 April 2001, the Harchars designated an expert to testify in the bankruptcy

court as to the emotional distress they allegedly suffered due to the IRS's handling of the

---

    [3] The government moved to dismiss the Harchars' complaint for failure to state a claim, and the Harchars filed an amended complaint reasserting their claim that the government violated § 362(a), but deleting a claim under 42 U.S.C. § 1983.  The bankruptcy court never addressed the merits of the government's initial motion to dismiss – specifically, that the temporary refusal to manually issue a debtor's tax refund after imposing a "freeze code" to prevent automatic processing does not constitute a violation of § 362(a) as a matter of law.  Instead, on 25 October 2001, the bankruptcy court denied the government's initial motion to dismiss, along with all other pending motions, as "moot."

Harchars' 1999-year tax refund.  (Bankruptcy Docket No. 35, Record, at 72-73).[4]  The

government objected that testimony from the Harchars' designated expert should not be

permitted because the Harchars' complaint did not specifically seek recovery of emotional

distress damages as required under Rule 9(g) of the Federal Rules of Civil Procedure.[5]

The bankruptcy court agreed with the government and instructed the Harchars that they

might file a motion for leave to amend the complaint.  (Bankruptcy Docket No. 38, Record

at 006).

On 9 May 2001, the Harchars submitted their motion for leave to amend their

complaint to "specifically state" their claims for damages related to emotional distress and

to add a claim that the government had violated the bankruptcy stay a second time by

delaying the Harchars' 2000-year tax refunds.[6]  (Bankruptcy Docket Nos. 46 & 47).   At

paragraph 88 of the proposed amended complaint, the Harchars allege that the IRS's use

---

[4]The Harchars' "Notice of Intent to Provide Expert Testimony at Trial" informed that
a JoAnn Kurek, LISW of Rocky River, Ohio would testify regarding:

> the fact of emotional distress, and the health and economic costs of emotional
> distress upon Mr. and Mrs. Harchar, a family of five with an annual income of
> $14,000.00, when, in 2000, despite the protection of the automatic stay, they were
> denied access to their tax refund and told by the IRS that the IRS would "take" it to
> apply to their prepetition liabilities.

(Id. at Record, 72).

[5]  Rule 9(g) requires that parties "specifically state" when "items of special
damages" are claimed.  Fed.R.Civ.P. 9(g).

[6]In the second claim of their Third Amended Complaint, the Harchars allege that the
IRS willfully violated three subsections of § 362 – 362(a)(3), (a)(6) and (a)(7).  (Third
Amended Complaint, at ¶¶79-81).

of the "freeze code" and delay in paying the Harchars their 1999 and 2000-year tax refunds

caused the Harchars both financial and emotional injury including:

> mental anguish, impairment of the enjoyment of life, pain
> and suffering, loss of consortium, and aggravation of marital
> difficulties in the amount of at least $20,000, or an amount
> proven at trial through the testimony of Mr. and Mrs. Harchar
> and an expert witness . . . .[7]

(Third Amended Complaint, at ¶88).[8]  The government opposed the Harchars' motion to

amend their complaint to include the foregoing language based upon the futility of seeking

damages for emotional harm under § 362(h).[9]

In ruling on the Harchars' motion to amend, the bankruptcy court observed that futility

is a proper basis to deny a motion to amend.  Nonetheless, the bankruptcy court granted

the Harchars' motion to amend without reaching the legal issue of whether recovery for

emotional harm is permitted under § 362(h).  The bankruptcy court indicated that this legal

---

[7]The Harchars also request "punitive damages in the amount of $100,000.00." (Third Amended Complaint, at ¶88).  Under the plain language of 11 U.S.C. 106(a)(3), any recovery of punitive damages from the government is prohibited.  11 U.S.C. §106(a)(3) ("The court may issue against a government unit an order, process, or judgment . . . including an order or judgment awarding a money recovery, but not including an award of punitive damages.").

[8] After the Bankruptcy Court granted the Harchars' motion to amend, the Harchars filed an Amended Complaint increasing their damages demand to $100,000.00.  (Docket No. 11, Record at 287).

[9] The bankruptcy court also permitted the Harchars to allege contempt of the order confirming the Plan as an additional legal theory upon which the government may be found liable for its actions relating to the 1999-year refund.  The government did not appeal this aspect of the bankruptcy court's order, and according to the government, this additional legal theory is "irrelevant to this appeal because the bankruptcy court allowed the addition of the emotional distress claim strictly under     § 362(h).  (Docket No. 26, at 10 n.11). The Harchars do not dispute the government's position in this regard.

issue should be resolved in a different procedural posture – after the parties had more fully

developed the facts.  The government appealed this ruling, and on 31 October 2003, this

Court granted the government's motion for leave to appeal.  (Docket No. 25).  On 19

November 2003, the United States filed its opening brief.  (Docket No. 26).  On 12

December 2003, the Harchars filed their response.  (Docket No. 27).  On 18 December

2003, the United States filed a reply brief.  (Docket No. 28).

## II. <u>STANDARD OF REVIEW</u>

On appeal from a bankruptcy court decision, a district court reviews questions of law

<u>de novo</u>.  <u>In re Gardner</u>, 360 F.3d 551, 557 (6th Cir. 2004).  Statutory interpretation, which is

central to the instant appeal, involves pure questions of law.  <u>In re Danny's Markets, Inc.</u>,

266 F.3d 523, 525 (6th Cir. 2001).  Therefore, this Court reviews the bankruptcy court's

decision to allow the Harchars to amend their complaint to add a claim for emotional

distress, <u>de novo.</u>

## III. <u>ANALYSIS</u>

Under §362(a) of the Bankruptcy Code, the filing of a petition for bankruptcy creates

an automatic stay which precludes all debt collection efforts outside the bankruptcy

proceedings.  11 U.S.C. § 362(a).  The § 362(a) automatic stay is enforced by a separate

provision, at issue in this case, that requires courts to award "actual damages, including

costs and attorneys' fees," as well as punitive damages under appropriate circumstances,

to individuals injured by a creditor's "willful violation of a stay."[10]  11 U.S.C. § 362(h).  The

---

[10]Determinations concerning violation of the automatic stay are core proceedings
pursuant to 28 U.S.C. §157(b)(2)(G) and (O).  <u>In re Bivens</u>, 324 B.R. 39, 41 (Bankr. D.

issue in this appeal, one in which the United States is the creditor, is whether § 362(h)

authorizes compensation for injuries such as emotional distress.  The government frames

the issue on appeal as follows:[11]

> Does §362(h) include the possibility of awarding
> damages to compensate for emotional distress – i.e.,
> does emotional distress qualify as "injury" within the
> meaning of the statute and/or are damages awarded
> therefor "actual damages"?

(Docket No. 26, at 3).  The government posits several arguments in support of answering

this question in the negative.  First, the government contends that the "statute is ambiguous

as to the kinds of 'injury' recognized and the meaning of 'actual damages.'" (Id. at 13, ¶2.a).

These ambiguities should be resolved, according to the government, by interpreting the

statute "in light of the nature and purposes of the bankruptcy laws generally, which are

financial in character" and by giving the modifier "actual" its only "logical meaning" which is

"that the damages must be able to be fixed objectively."  (Id.).  Further, the government

argues that § 362(h) should be given a narrow construction because it "is part of a statutory

waiver of sovereign immunity."  (Id. at 14 ¶14.f).

Next, the government argues that § 362(h) was merely intended to codify the

bankruptcy court's existing contempt powers when significant doubts regarding the same

existed.  (Id. at 13 ¶2.b (arguing that this Court adopt reasoning to this effect from Aiello v.

Providian Fin'l. Corp., 239 F.3d 876 (7th Cir. 2001)).  Construing § 362 as requiring the

_____

Ohio 2004).

[11]The Harchars' recitation of the issue on appeal is similar: "whether 11 U.S.C. §
362(h) authorizes the awarding of emotional damages when a debtor also suffers a
financial loss."  (Docket No. 27, at 2).

award of emotional damages would effect a radical change in the law both as it existed in

1978 when the statutory stay was enacted and in 1984 when § 362(h) was added – "and

carry the emotional damages remedy into a new realm where the common law has

precluded it, and where statutes have rarely extended it."  (Id. at 14 ¶2.e).  Finally, as a

policy matter, the government argues that the expansive interpretation of "willful violation"

combined with the mandatory award of "actual damages" would work an unfairness to those

creditors who "inadvertently violate the stay."  (Id. at 14 ¶2.d).

    The Harchars urge this Court to follow the "significant number of courts . . . [that] have

held that the term 'actual damages' does by definition encompass recovery for personal

emotional injury."  (Docket No. 27, at 6 & 9 (pointing to the "[n]umerous courts" that "have

ruled that damages for emotional injury are among the actual damages mandated by [§

362(h)]").[12]  The government counters that those decisions permitting recovery of damages

for emotional harm under § 362(h) should be disregarded because they "either lack

analysis or their analysis is demonstrably flawed." (Docket No. 26, at 15 ¶2.g).  As to

statutory construction, the Harchars agree that the "nature of the interest protected or wrong

sought to be remedied" (i.e. the "injury") is a proper focus of this Court's analysis; however,

the Harchars disagree that the bankruptcy laws are concerned exclusively with financial

---

    [12]Courts have required the IRS itself to pay damages under § 362(h), including
emotional distress damages, that were caused by particularly egregious violations of the
automatic stay by the IRS.  E.g., Covington v. IRS (In re Covington), 256 B.R. 463, 467
(Bankr. D.S.C. 2000) (awarding damages for emotional distress caused by the impact of
notice of IRS intent to levy on debtors);  Davis v. U.S. (In re Davis), 201 B.R. 835 (Bankr.
S.D. Ala. 1996) (awarding emotional distress damages resulting from the IRS's actual
seizure of the debtor's funds);  Matthews v. U.S. (In re Matthews), 184 B.R. 594 (Bankr.
S.D. Ala. 1995) (same).

matters.  (Docket No. 27, at 7-9).  Rather, the Harchars characterize the automatic stay provisions and § 362(h) in particular as a "consumer protection statue."  (<u>Id.</u> at 9).  In support of this characterization, the Harchars point to select legislative history and the use of the word "individuals" in  § 362(h).  (<u>Id.</u> at 11-14.) ("That the enactment covers more than pecuniary loss finds support in the fact that Sec. 362(h) applies only to individuals.")

The Harchars do not squarely address the government's argument that § 362(h) should be narrowly construed due to the waiver of sovereign immunity.  Nor do they dispute the government's argument that an award of damages for emotional injury would constitute an improper change to the historical operation of the bankruptcy laws.  After carefully considering each of the parties' arguments below, the Court finds that the government has made the more persuasive case.

**A.     Ambiguity of the Term "Actual Damages" In § 362(h) and the**
        **Split of Authority Among the United States Circuit Courts of Appeal.**

The arguments made by the parties echo the analysis employed by different federal circuit courts of appeal resulting in a split of authority on the issue of what damages are authorized under § 362(h).  Importantly, the circuit courts of appeals that have considered the issue agree that "actual damages" as used in § 362(h) is subject to different interpretations.[13]  <u>See</u> <u>Dawson v. Washington Mutual Bank (In re Dawson)</u>, 390 F.3d 1139, 1146 (9th Cir. 2004) (hereinafter <u>Dawson II</u>) ("Even after examining the text and context of § 362(h), however, its meaning remains ambiguous."); <u>e.g.</u>, <u>Aiello v. Providian Fin'l. Corp</u>,

---

[13]"Actual damages" is not defined in the Bankruptcy Code – nor are the terms "injury" or "individual."

239 F.3d 876, 879 (7th Cir. 2001).  Having agreed that § 362(h) is ambiguous, the split of

authority concerns the differing interpretations of the ambiguous terms.  While the Sixth

Circuit has construed the term "willful" under § 362(h), it has not yet construed the terms at

issue here.

> **1.      The Seventh Circuit Court of Appeals.**

In Aiello, the Seventh Circuit Court of Appeals resolved the ambiguity in the

language of § 362(h) by looking to the structure and purpose of the automatic stay and the

historical context of the enactment of § 362(h).  239 F.3d 876, 879 (7th Cir. 2001).   As to

the former, the Aiello court reasoned that the "protection" afforded by the automatic stay,

like the Bankruptcy Code as a whole, "is financial in character;  it is not protection of peace

of mind."  Id. at 879.  According to the Aiello court, "[t]he office of    § 362(h) is not to

redress tort violations but to protect the rights conferred by the automatic stay."[14]  Id.   As to

historical context, the Aiello court noted that § 362(h) was simply:

> a footnote to the power, now more than a century and a
> half old, to stay creditors' collection efforts in order to
> preserve the debtor's estate.  There is no indication that
> Congress meant to change the fundamental character of
> bankruptcy remedies by enacting the new subsection.

---

[14]The Aiello court also suggested that a debtor may seek recovery for improper debt collection practices under ordinary state-law tort or statutory claims.  Id. at 880.  This aspect of the Aiello court's reasoning is flawed to the extent that courts have found such claims to be preempted by the Bankruptcy Code.  See e.g., Eastern Equipment and Services Corp. v. Factory Point Nat'l Bank, 236 F.3d 117 (2d Cir. 2001).  The Sixth Circuit Court of Appeals is among the courts that have accorded broad preemption under the bankruptcy code.  See Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 426 (6th Cir. 2000) (precluding debtors from asserting a claim of unjust enrichment based upon conduct alleged to be in violation of the automatic stay because "[p]ermitting . . . state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve").

Id. at 880-81.   Refusing to find an alteration to prior bankruptcy law and practice absent explicit expression of congressional intent, the Aiello court ruled that emotional harm is not a compensable injury under § 362(h).[15]  Id.

### 2.    The First and Ninth Circuit Courts of Appeals.

Unlike the Seventh Circuit, the First and Ninth Circuit Courts of Appeal have both held that emotional harm is a compensable injury under § 362(h).  Fleet Mortgage Group, Inc. v. Kaneb, 96 F.3d 265, 269-70 (1st Cir. 1999);[16] see also Dawson II, 390 F.3d 1139, 1146.  The Ninth Circuit Court of Appeals initially sided with the Seventh Circuit in holding that emotional harm was not compensable under § 362(h).  See Dawson v. Washington Mutual Bank (In re Dawson), 367 F.3d 1174 (hereinafter, "Dawson I") ("We hold that 'actual damages' under §362(h) do not include damages for emotional distress."), opinion withdrawn, 385 F.3d 1194 (9th Cir. 2004).  In so holding, the Ninth Circuit noted that other federal statutes utilizing the term "actual damages" – including § 504(b) of the Copyright Act

---

[15]District courts of the Seventh Circuit have consistently applied the Aiello precedent to deny damages for emotional harm under § 362(h).  E.g. In re Welch, 296 B.R. 170, 172 (Bankr. C.D. Ill. 2003);  In re Benalcazar, 283 B.R. 514, 522 n.1 (Bankr. N.D. Ill. 2002).

[16]The Fleet court affirmed a $25,000 damage award for the emotional harm a debtor suffered when a creditor attempted to foreclose on his home and published a notice of foreclosure in a local newspaper.  96 F.3d at 269-70 (evidence regarding debtor's emotional harm included the debtor's own testimony that he did not sleep or eat well and he suffered a decline in social invitations).  In a single sentence, the Fleet court addressed the statutory authority for such an award:  "emotional damages qualify as 'actual damages' under § 362(h)."  Id.  As the government and the courts in Aiello and Dawson I noted, the Fleet court's reasoning is so cursory that it provides no guidance in resolving the issue of how best to interpret § 362(h).  Aiello, 239 F.3d at 878; Dawson I, 367 F.3d at 1180, n.4 (noting that the Fleet court "did not engage in any substantive analysis").

and § 78bb(a) of the Securities Act – do not permit recovery of damages for emotional

harm.  See id. at 1179-80 (defining "actual damages" in each statute as "some form of

economic loss").  According to Dawson I, the interests served by these statutes, like

"§362(h) are economic."  Dawson I, 367 F.3d at 1180.

    After rehearing, the Ninth Circuit reversed its decision in Dawson I based on the

reasoning that congressional intent to compensate debtors for their emotional injuries is

evident from certain legislative history and the use of the word "individual" in § 362(h).[17]

Dawson II 390 F.3d at 1148.  According to the Dawson II court, the word "individual" offered

a "contextual clue" to what Congress meant by "actual damages"  –

> By limiting the availability of actual damages under
> § 362(h) to individuals [be they debtors or creditors],
> Congress signaled its special interest in redressing harms
> that are unique to human beings.  One such harm is
> emotional distress, which can be suffered by individuals but
> not by organizations.

Dawson II, 390 F.3d at 1149.  The Dawson II court then recited legislative history from the

1978 Act to reinforce its conclusion that in enacting the 1984 Act, Congress had a "special

interest in redressing harms that are unique to human beings."  Id. at 1149-51.

    **3.    The Sixth Circuit Court of Appeals.**

    The Sixth Circuit Court of Appeals has not addressed the issue of whether

emotional distress is compensable under § 362(h).  Some bankruptcy and district courts

---

[17]After the Ninth Circuit denied the creditor's request for rehearing en banc in
Dawson II, the creditors petitioned the United States Supreme Court for a writ of certiorari.
It is anticipated that the Justices will consider the issuance of a writ in Dawson II at
conference scheduled for 26 September 2005.  See Docket for 04-1605, available at,
http://www.supremecourtus.gov/docket/04-1605.htm.

within the Sixth Circuit have permitted debtors to recover damages under § 362(h) for

emotional injuries.[18]  Those who have denied recovery of emotional damages have done

so based upon the debtor's failure of proof – not based upon a finding that § 362(h) does

not authorize such damages.[19]  These courts, like <u>Fleet</u>, simply assume that "emotional

harm" is a compensable injury under § 362(h) – granting or denying compensation for the

same based upon the quantum of proof offered by the debtors.  These decisions provide

no substantive analysis regarding the scope of damages Congress intended to authorize

by enacting § 362(h).

　　　　Because neither the Sixth Circuit Court of Appeals nor the district courts within the

Sixth Circuit have construed § 362(h), it is a matter of first impression within this circuit.

Based upon the Sixth Circuit's careful adherence to the rules of statutory construction set

forth by the United States Supreme Court, this Court disagrees with <u>Dawson II</u> and joins the

Seventh Circuit in construing § 362(h) as authorizing compensation for only

tangible/economic injuries.

---

[18]<u>See</u> <u>e.g.</u>, <u>In re Emberton</u>, 263 B.R. 817, 826 (Bankr. W.D. Ky. 2001) (awarding punitive damages to compensate for "loss of person's freedom and dignity" and for "21 days incarceration with attendant extreme emotional distress"); <u>In re Lohbauer</u>, 254 B.R. 406 (Bankr. N.D. Ohio 2000) (awarding $3,000 in damages for emotional distress); <u>In re Jacobs</u>, 100 B.R. 357 (Bankr. S.D. Ohio 1989) (including damages for embarrassment and humiliation in compensatory damages calculation); <u>In re McGee</u>, 181 B.R. 307, 311 (Bankr. N.D. Ohio 1995) (awarding compensatory damages based in part upon embarrassment and aggravation suffered by the debtor).

[19]<u>In re Meis-Nachtrab</u>, 190 B.R. 302, 308 (Bankr. N.D. Ohio 1995) (denying emotional distress damages where granting of same would be based on mere speculation or conjecture.)  <u>In re Bennett</u>, 135 B.R. 72, 77 (Bankr. S.D. Ohio 1992) (declining to award damages for humiliation due to a failure of proof); <u>In re Newell</u>, 117 B.R. 323, 325 (Bankr. S.D. Ohio 1990) (denying emotional distress damages while noting that such damages might be allowed in some cases).

**B.     The Rules of Statutory Construction**

Statutory interpretation must begin with the language of the statute itself.  Perrin v.
United States, 444 U.S. 37, 42 (1979) ("Ordinarily, the first step in construing a statute is to
interpret the statutory language in accordance with its plain meaning.")   The language
cannot be viewed in a vacuum; rather, the United States Supreme Court instructs courts to
"look not only to the particular statutory language but to the design of the statute as a whole
and to its object and policy."[20]  Grogan v. Garner, 498 U.S. 279, 288 n.13 (1991).  Where a
statute is ambiguous, the court's goal is to discern the intent of the legislative body.
Robiner v. Danny's Markets, Inc. (In re Danny's Markets), 266 F.3d 523, 525 (6th Cir. 2001).
As to the Bankruptcy Code in particular, the United States Supreme Court has instructed
that the code is not to be construed as altering prior law unless a change is explicit.
Dewsnup v. Timm, 502 U.S. 410, 418 (1992).

Courts must also keep in mind that "a statute ought, upon the whole, be so construed
that . . . no clause, sentence, or word shall be superfluous, void, or insignificant."  Duncan v.
Walker, 533 U.S. 167, 174 (2001) (internal quotation marks omitted).  Further, statutes that
act as a waiver of sovereign immunity should be construed narrowly in favor of the United
States.  Library of Congress v. Shaw, 478 U.S. 310, 318 (1986) (instructing that courts
"must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver

---

[20]Of course, where the meaning of the statute is plain, the court's role is to enforce
the statute according to its terms.  In re Danny's Markets, 266 F.3d at 525.  As noted
above, here, the meaning of § 362(h) is not plain.  See supra, Part III.A.

15

'beyond what the language requires'"); e.g., Department of Army v. Federal Labor Rels. Auth., 56 F.3d 273, 277 (D.C. Cir. 1995).[21]

In accordance with the foregoing, this Court must examine the language of § 362(h) in light of the object and policy of the Bankruptcy Code as a whole, and also must determine whether the legislature intended to alter the law in effect when § 362(h) was enacted.

Prior to 1973, the stay of collection proceedings against a debtor was imposed by court order on application, and later by general order. See In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1104-05 (2d Cir. 1990) (explaining that "[u]nder the old Bankruptcy Act of 1898, the stay was not statutory"). Violation of such court ordered stays were sanctioned in accordance with procedures for contempt of court. Id. After 1973, the automatic stay was available under the Bankruptcy Rules and Official Bankruptcy Forms which were approved by the United States Supreme Court. See Fed.R.Bankr.P. 401 & 601 (1973). The rules adopted in 1973 also provided bankruptcy referees with the power to cite and punish parties for civil and criminal contempt by imposing fines of up to $250. Fed.R.Bankr.P. 920 (1973). Thus, contempt procedures continued to be the accepted

---

[21]Beyond these general rules of statutory construction, courts may rely on precedent from other courts. Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2003). Further, where language in one statute is the same as language in another statute, such language should generally be given consistent meanings. See Stupak-Thrall v. U.S., 89 F.3d 1269, 1293 (6th Cir. 1996); U.S. v. Stauffer Chemical Co., 684 F.2d 1174, 1188 (6th Cir. 1982). Of course, the intent of the legislature also may be evidenced in the statute's legislative history, if any. In re Danny's Markets, 266 F.3d at 525.

procedure for enforcement of stay violations.[22]  The statutory automatic stay came into

being as part of the Bankruptcy Reform Act of 1978 (the "1978 Act").  See 11 U.S.C.

§362(a).  The 1978 Act provided no mechanism for enforcement of the automatic stay –

perhaps due to the legislature's expectation that enforcement would continue via

procedures for contempt of court.[23]

  Soon after the 1978 Act was enacted, the propriety of using contempt procedures to

remedy violation of a statute, particularly § 362(a), was called into question.  See e.g.,

Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 422 (6th Cir. 2000) (observing that

"reliance on contempt power to remedy violations of § 362 had been widely criticized").

Creditors argued that it was not possible to be in "contempt" of a rule of procedure or a

statute as opposed to an order of a court.  See Fidelity Mortgage Investors v. Camelia

Builders, Inc., 550 F2d. 47 (2d Cir. 1976).  Then, in 1982, the United States Supreme Court

decided Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50

(1982), and cast further doubt on the authority of bankruptcy judges to enforce the automatic

stay through traditional contempt sanctions.

---

[22]See generally, Jeffrey A. Stoops, Monetary Awards to the Debtor for Violations of
the Automatic Stay, 11 Fla.St.U.L.Rev. 423, 428-38 (Summer 1983) ("[T]he initiation of a
contempt proceeding against the creditor should be the debtor's first choice when
seeking compensatory relief.")  The preferred approach of bankruptcy courts was to hold
any action taken in violation of the stay to be "void and without effect."  Stoops, at 429.

[23]An exceptionally thorough summary of the history of contempt powers in the
bankruptcy context and the controversy regarding the same is provided in: Laura B.
Bartell, Contempt of the Bankruptcy Court – A New Look, 1996 U. Ill. L. Rev. 1 (1996).
Ms. Bartell concludes that to this day questions remain as to whether a bankruptcy judge's
exercise of contempt powers is constitutional.

In Northern Pipeline, the United States Supreme Court invalidated § 241 of the 1978 Act as an unconstitutional grant of jurisdiction to non-Article III courts, and provided Congress the opportunity to restructure the legislation in a manner which would pass constitutional muster.  Id. at 88;  see also Northern Pipeline, 459 U.S. 813 (1982) (staying the effective date of the Northern Pipeline decision until 24 December  1982 to give Congress and opportunity to act).  It was under these circumstances that Congress enacted § 362(h) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act").  Pub. L. No. 98-353, 98 Stat 333.

Given the foregoing, there can be little doubt that when § 362(h) was enacted in 1984, Congress was concerned not with providing debtors compensation for emotional harms, but with providing explicit statutory authorization for the "only previously available remedy for a stay violation:  Contempt."  In re Bivens, 324 B.R. 39, 42 (Bankr. D. Ohio 2004).  There is little indication that awarding damages for emotional harm was commonplace under the bankruptcy court's traditional contempt procedures – or in any contempt procedures familiar to Congress in 1984.  Rather, courts recognized that "[t]he problems of proof, assessment, and appropriate compensation attendant to awarding damages for emotional distress are troublesome enough in the ordinary tort case, and should not be imported into civil contempt proceedings."  McBride v. Coleman, 955 F.2d 571, 577 (8th Cir. 1992); In re Walters, 868 F.2d 664, 670 (4th Cir. 1989); Weitzman v. Stein, 891 F.Supp. 927, 932 (S.D.N.Y. 1995).[24]  Given this state of the law, Congress

---

[24]In Archer v. Macomb County Bank, the Sixth Circuit took a similarly dim view to awarding "actual damages" under § 362(h) based upon "vague speculation" of lost contracts and injury to one's "business reputation."  853 F.2d 497, 500 (6th Cir. 1988)

18

would have to have included a clear expression of any intent it may have had to authorize

compensation for emotional damages under § 362(h).  See Dewsnup, 502 U.S. at 419.

This Congress did not do.

The parties take extreme positions regarding the object and policy of bankruptcy

law.  The parties' positions are not well-supported and confuse rather than elucidate the

task of statutory interpretation here.  For instance, the government's (and the Aiello court's)

position that the Bankruptcy Code is concerned exclusively with financial matters and "was

not drafted with reference to the emotional incidents of bankruptcy" is contradicted by

statements in the House Report for the 1978 Act that:

> The automatic stay . . . gives the debtor a breathing spell
> from his creditors . . . [stopping] all collection efforts, all
> harassment, and all foreclosure actions. [The automatic
> stay permits the debtor] simply to be relieved of the
> financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595, at 340 (1977).[25]   The Harchars' argument that the Bankruptcy Code

is a "consumer protection" statute that should be analogized to other consumer protection

statutes which permit recovery for emotional harm is similarly unhelpful.  (Docket No. 27, at

---

(reversing award of damages under § 362(h) in excess of objective pecuniary losses).

[25]The government's argument that the object and policy of the bankruptcy laws are "financial in character, including discharge of indebtedness, reorganization and rehabilitation of businesses, and orderly liquidation of assets" is supported by the House Judiciary Report accompanying enactment of the automatic stay in 1978 which provides that:  (1) "[t]he purpose of § 362(a) is it to prevent dismemberment of the estate" and (2) creditors should not obtain "preferential treatment [through unauthorized lien creation] by making them secured instead of unsecured" and (3) the stay permits distribution of property by the trustee only "after he has had an opportunity to familiarize himself with the various rights and interest involved and with the property available for distribution." H.R. Rep. No. 95-595, at 340 (1977).

9).  The Bankruptcy Code shares few attributes with the consumer protection statutes referenced by the Harchars and prior to 2005 had never been referred to as a consumer protection statute.[26]

The most accurate description of the bankruptcy laws lies somewhere between the parties' positions – the bankruptcy laws are primarily (not exclusively) addressed to economic issues and financial loss, but also address ("at least in part"), "the emotional and psychological toll that violation of a stay can exact." Dawson II, 390 F.3d at 1146. However, the conclusion that harassment of debtors is contrary to the bankruptcy laws does not lead to a finding that Congress intended to permit, in addition to a stay,  recovery of damages for claimed emotional injuries of a debtor (or creditor) due to violations of the automatic stay.

As noted above, the legislature's seeming acknowledgment of the plight of "harassed" debtors in 1978 was in the context of enacting the statutory automatic stay itself – § 362(a) – without providing an enforcement mechanism of any kind.  This comports with the fact that the legislative history relied upon by the Harchars (and by the In re Dawson II court) never once references either the term "compensation" or its concept.  Moreover, this Court finds that reference to the term "individual" in § 362(h) is too slim a reed upon which

---

[26]The most recent amendments to the bankruptcy laws are actually titled: "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005."  The "consumer protection" provisions of this new law ensure that consumer debtors complete "an instructional course concerning personal financial management" before discharge (§106) and are not taken advantage of by "bankruptcy petition preparers" (§110) or "debt relief agencies" (§227).  See Public L. No. 109-08, 119 Stat 23 (2005).  Use of such a statutory title twenty-one years after enactment of § 362(h) can have no impact on this Court's analysis of the damages contemplated by Congress in 1984.

to hang a finding of congressional intent to provide compensation for emotional harm. "Individual" is almost as ambiguous as "actual damages" – it is not defined in the Bankruptcy Code – and the "question whether a corporate debtor is an 'individual' entitled to damages under § 362(h) split the circuits" for many years after enactment of § 362(h). Limor v. Buerger (In re Del-Met Corp.), 322 B.R. 781, 827 (Bankr. D. Tenn. 2005) (collecting cases).[27]

Congress has shown that when it intends to permit compensation of emotional harms as "actual damages" it knows very well how to do so. In enacting the Civil Rights Act, Congress referenced "emotional pain" and "mental anguish" as components of the "actual damages" provided for under the Act. 42 U.S.C. §1981a(b). Failure, as here, to specifically reference "emotional pain" within the terms of a statute is an indication that recovery for such injuries is not authorized. This is particularly true where, as here, the government's sovereign immunity is at issue.

For several years, courts were split as to whether the government had waived its sovereign immunity with regard to violations of § 362(h). This dispute was resolved in 1994 when the present version of 11 U.S.C. §106 was enacted. Under the 1994 version,

_____

[27]See also United States v. Academy Ans. Serv., Inc. (In re Academy Ans. Serv., Inc.), 100 Bankr. 327, 329 (Bankr. N.D. Ohio 1989) ("In view of . . . the lack of a persuasive rationale for distinguishing individuals and corporations as candidates for the contemplated relief, this Court is not satisfied that § 362(h) protection is unavailable to corporations") and Mallard Pond Partners v. Commercial Bank & Trust Co. (In re Mallard Pond Partners), 113 Bankr. 420, 423 (Bankr. W.D. Tenn. 1990) (this court holds that for purposes of § 362(h) the word 'individual' is construed to include a partnership (or corporate) debtor") and Schewe v. Fairview Estates (In re Schewe), 94 Bankr. 938, 948 (Bankr. W.D. Mich. 1989) ("An 'individual' as set forth in § 362(h) may include a corporate entity.")

Congress made clear that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Section . . . 362." 11 U.S.C. §106(a)(1) (1994).  Under well-settled law, even this waiver must be narrowly construed in favor of the sovereign.  E.g. Department of Army v. Federal Labor Relations Authority, 56 F.3d 273, 277 (D.C. Cir. 1995) ("The Government's consent to a particular remedy must be unambiguous . . . .") Faced with a statute waiving sovereign immunity, the Sixth Circuit in Hudson v. Reno, determined that statutory reference to recovery of "actual damages" under the Privacy Act, 5 U.S.C. §552a(g)(4), did not authorize compensation for "embarrassment and other non-quantifiable injuries." 130 F.3d 1193, 1207 (6th Cir. 1997).  There appears to be no reason that the Sixth Circuit would construe "actual damages" differently under § 362(h).

Section 362(h) is indisputably an ambiguous statute with a dearth of legislative history.  Nonetheless, by considering the language of the statute in terms of its purpose and in light of the circumstances surrounding its enactment, it is clear that Congress did not intend to authorize the award of emotional damages under § 362(h).  The provision for attorneys fees and punitive damages ensures that any concern expressed by the legislature regarding creditor "harassment" of debtors will be effectively addressed.  Had more been intended, it was incumbent upon Congress to make such intent known by an explicit reference to "emotional pain" or "mental anguish."  The failure of Congress to do so is the determinative factor in this Court's analysis.

**C.** **Futility**

The Harchars' motion to amend their complaint raised a pure issue of law that was not dependent upon further development of the facts.  Thus, the bankruptcy court erred in declining to engage in the statutory analysis set forth above to reach the issue of whether the damages claimed in the amended complaint are compensable under  § 362(h).  See Hahn v. Star Bank, 190 F.3d 708 (6th Circuit 1999).  Because emotional damages are not compensable under § 362(h), the Harchars' amendment of the complaint to include such damages was futile.  Id.

## IV. CONCLUSION

The bankruptcy court's 20 December 2001 Order is **reversed** to the extent it permitted the Harchars to add a claim for emotional distress damages to their complaint.
IT IS SO ORDERED.

 /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Dated: 28 September 2005

23